THE PEOPLE OF THE STATE OF ILLINOIS, FOR USE, ETC.,
v.
FRANK P. GILLESPIE ET AL.

*Principal and Surety—County Collector—Action on Bond—Revenue Act—Jurisdiction of Appellate Court—Chaps. 113 and 120 Ills. Stats.*

1. An action brought in the name of the people of the State for the use of a given county on the official bond of a county collector to recover for alleged breaches of the conditions thereof, is not a case relating to the revenue intended by the legislature to be embraced within the scope and meaning of section 88 of the Practice Act, nor is it a case wherein the State is interested as a party or otherwise. The State is merely a nominal party plaintiff, but is not interested in the case as a State.

2. When an officer has received money, which, by the terms of the law prescribing his duties, he is required to dispose of in a specified mode by a particular time, and fails to do so, to avoid liability he must account for its proper and legal disposition.

3. The cases embraced within the meaning of Sec. 88 of the Practice Act are those only in which the question of the legality of an assessment or levy of a tax is directly in issue, or the liability of a person or persons or of a corporation to pay a tax levied is denied, and such liability is the question submitted for adjudication.

4. The Appellate Court has jurisdiction of an action upon an official bond where the legality of a given tax, or whether money received is a tax, is brought up collaterally in defense, as in the case presented.

5. A county collector and his sureties can not be heard to say that a tax levy was not properly made, or the tax collected without proper authority. Such tax being collected by the collector by virtue of his office, it is his duty to report and account for the same, and charge it to himself, as treasurer, the county being under township organization.

[Opinion filed June 26, 1893.]

IN ERROR to the Circuit Court of Richland County; the Hon. CARROLL C. BOGGS, Judge, presiding.

Messrs. ALLEN & FRITCHEY and JOHN LYNCH, Jr., for plaintiffs in error.

The following authorities are cited, and establish the doctrine that when a tax collector collects taxes from the

The People v. Gillespie.

tax-payers, he must account for the same, and can not ques-·tion the legality of the tax, or his right to receive it; and that the giving of the bond, the taking the oath, and the collecting of the taxes, bind the sureties, and they are liable for any defalcation: Feigert v. the State of Ohio, 31 Ohio St. 432; Cunningham v. Mitchell, 67 Pa. St. 78; The City and County of San Francisco v. William Ford, 52 Cal. 198; Wilkinson v. Bennett, 56 Ga. 290; State of Alabama v. Lott, 69 Ala. 147; State v. Rushing, 17 Florida, 226; Ford, Treasurer, v. Clough, 8 Greenleaf Report (Maine) 334; Moore v. Allegheny City, 18 Pa. St. 55; Brandt on Surety-ship, Sec. 447; Inhabitants of Orono v. Wedgwood, 44 Maine, 49; Walden v. Lee County, 60 Ga. 296; Commonwealth v. Philadelphia, 27 Pa. St. 497; Brunswick v. Snow et al., 73 Maine, 177; Clifton v. Wynne, 80 North Carolina, 145; Livingston County v. Hoover et al., 92 Ill. 575; Lovingston v. Board of Trustees, 99 Ill. 527; Coons v. The People, 76 Ill. 383; The People v. Cooper, 10 Ill. App. 384; Stern v. The People, 102 Ill. 550; Cooley on Taxation, second edi-tion, Chapter XXII, pages 704-5-6-8-9-10-11-21-22; 47 Conn. 76; 50 Maine, 347; 68 Maine, 160.

For the convenience of the court we print the decisions bearing upon this question, which are the leading cases in the sister States.

1. "Where a levy of taxes is made in excess of the rate allowed by law, and the assessment containing such excess is placed on the duplicate or tax list by the county auditor, and collected by the treasurer, and the persons by whom the tax is paid interpose no objection, the failure of the treasurer to pay over to his successor that portion of the tax illegally assessed, is a breach of his official bond, for which the sureties are liable as well as the principal." Feig-ert v. The State of Ohio, 31 Ohio St. 432.

2. "When a collector takes a warrant regular on its face issued by an authority having a lawful power to issue it, how can he inquire into the precedent steps and determine that in his opinion the power has not been exercised in a proper case? This determination does not belong to him,

but to the board whose warrant he must obey. Any other doctrine would put an end to the collection of taxes whenever a difference of opinion arises as to the object to which the tax is to be applied." Cunningham v. Mitchell, 67 Pa. St. 78.

3.   " It is the duty of a tax collector, under the code, on the first Monday in each month to pay to the county treasurer all money collected by him as taxes for the State and county; even if the tax is illegal and the money paid to the collector under protest. If the tax is illegal and extortionate and paid under protest by individuals, he can not wait for a judicial determining between him and the tax-payers, but it is his duty to pay over." The City and County of San Francisco v. William Ford, 52 Cal. 198.

4.   The collector used the orders to collect the money; he now seeks to attack them to retain it. He armed himself, as a public agent, with what was supposed to be good authority. The authority was not resisted by the tax-payers; they did not complain that the taxes were illegally assessed but paid over the money for the public use. After this has been done, can the collector be heard to say that he must keep the money because, perchance, the tax-payers may reclaim it? On the score of strict law we think the collector can not protect himself by alleging a title to this money outstanding in the tax-payers from whom it was received.

The collector is an agent and as such received the money. The public is his principal for whom it was received. Wilkinson v. Bennett, 56 Georgia, page 290.

5.   A tax collector is under no obligation to execute a warrant irregular on its face. The tax-payers may waive any formal defects and pay their taxes to the collector; and if he receives them, the defective warrant is no defense against the claim of the town for the money actually received. The acceptance of a collector's (or tax gatherer's) bond is a sufficient consideration to cover all official delinquencies in not paying over money actually collected after such acceptance. 68 Maine, page 160.

6.   This was a suit on the collector's bond, no denial of

The People v. Gillespie.

collection of taxes, but defense was that no town clerk, selectman, assessors, treasurer, constable or collector of taxes were properly chosen, qualified and sworn in, and therefore the collector of taxes was an illegal officer and collection of taxes illegal.

Although these officers were not properly elected and qualified, if the tax-payers voluntarily paid their taxes to the collector he is bound to pay to the treasurer *de facto* the sums collected.

Action on the bond can be maintained, although the tax was raised at an illegal meeting and although the assessors were illegally chosen. (Court cites) Ford v. Clough, 8 Greenleaf, 335; Johnson v. Goodrich, 15 Maine, 29.

It is contended further in this case that the proceedings of the town were irregular, informal and illegal.

This is manifestly true. It is not often that such a medley of irregularities is exhibited in the proceedings of our municipal corporations.

But the question is, are these irregularities of such a character as to exonerate the defendants from paying over money which they have collected by virtue of those proceedings, from the citizens, and to which they have no title, equitable or legal?

The authorities as well as every moral principle negative such a proposition. 50 Maine, 347.

8. The condition of a tax collector's official bond is that he will perform all the duties of the office which are or may be required by law. The bond operates as a security, not only for honesty in paying over the money actually received, but for skill and the measure of diligence the law exacts in collecting. The real intent of the official bond expressed in a few words, in which the statute requires the conditions to be written, is, that the collector will with fidelity, skill and diligence perform the duties of the office, and keep inviolable the trusts reposed in him. The condition of the bond is broken whenever there is a default in the performance of duty, not capable of excuse, or for which excuse is not shown. Whatever of damage or injury accrues to the State from the

breach is at that instant recoverable, and the duty and liabilities to make compensation therein rests upon the several obligors, principal and sureties. The failure to collect is a breach of the bond equally with the failure to pay over the money collected. State of Alabama v. Lott, 69 Ala., page 147.

9. If a collector is appointed who has, unknown to the surety, previously been a defaulter in the same office, the surety can not claim release on the ground that the State has deceived him by appointing such a man. If the tax-payers voluntarily pay to the collector the amount of taxes due from them upon the assessment roll in his possession, his act in receiving the money is an official act, and his receipt is a discharge of the taxes levied as completely as though the warrant had been issued to him. The moneys he so received are taxes without reference to the warrant. The assessment and the apportionment of the amount of money required for public purposes by the proper officers, in the manner and time described by law, gives this money the character of taxes, and it is this money that the bond is intended to secure. It has been held in numerous cases that when sureties undertake that a tax collector shall pay over moneys collected by him by virtue of his office, they are liable for the money so collected whether with or without a warrant, and without regard to any irregularity in the tax list or warrant, the taxes having been voluntarily paid to him. (The court cites) 15 Maine, 29; 8 Greenleaf, 334; 44 Maine, 49; 15 Gray, 429; State v. Rushing, 17 Florida, page 226.

10. When the bond given by collector of taxes contained a recital that he was duly chosen, and was conditioned for the faithful discharge of his duty, it was held, in an action on the bond for not paying over money collected, that the sureties could not controvert the legality of the meeting at which he was chosen, nor the validity of his election, nor the legality of the assessment of the taxes, antecedent to their commitment to him, nor any act of the town for which they themselves would not be liable in consequence of their suretyship.

The People v. Gillespie.

The proper action for the purpose of reclaiming such taxes, if it legally asserted, would be by an action of assumpsit against the town whose agent had received the money. (See 17 Mass. 461.)

The collector is not considered responsible for any irregularities on the part of others antecedent to the commitment of the assessment to him for the purpose of collection. His warrant is his protection against all illegality but his own. After having thus collected the money, we think he, the collector, ought not to be permitted to deny the legality of the assessments. Ford, Treasurer, v. Clough, 8 Greenleaf Report, Maine, 334.

13. The sureties on a bond given by the sheriff for collection of taxes can not, when sued for taxes collected and not paid over by the sheriff, contest the legality of the ordinances making the assessment. By receiving the tax roll and executing the bond, the sheriff and his sureties recognized the legality of the ordinances, and it is too late to contest their validity as to the money collected after acting under them and collecting taxes. McGuire v. Buy, 3 Robinson (La.), 193; Miller v. Moan, 3 Humphrey (Tenn.), 189.

Defects in a warrant or tax list may be a good reason for not executing the warrant, but a collector having collected money without objection by the tax-payers is liable to account therefor, and his sureties can not, by reason of such defects, excuse themselves from paying the money collected by the principal in the bond wherein they have bound themselves that he shall, well and faithfully, perform all the duties of his office. Inhabitants of Orono v. Wedgewood, 44 Maine, page 49.

14. The collector can not attack the validity of the orders under which he has collected the county tax, as a reason for not paying the money over, even if they were illegal. Walden v. Lee County, 60 Ga. 296.

15. It is not by any means clear that a public officer charged with the duty of collecting a tax can be permitted to deny his own power after having exercised it. Shall he be allowed to assert that a tax is chargeable when he de-

mands it from the citizens and then say it is not chargeable
when the State demands it from him? It seems much more
just and reasonable to require that every agent of the com-
monwealth who receives money for her in the shape of taxes
should pay it over and let the aggrieved party make his
appeal to the State himself. Commonwealth v. Philadel-
phia, 27 Pa. St. 497.

16. This is an action upon a bond given to secure the
fidelity of the principal, as collector of taxes for the town of
Brunswick. It is admitted in the bond that he was duly
appointed as such. The principal makes no defense. The
sureties defend on the ground that the warrant under
which the taxes were collected was defective, and there-
fore illegal; that this was the fault of the town, and that
the town ought not to derive a benefit against an innocent
party, when itself guilty of neglect and illegal proceeding
in the matter which is the foundation of the claim. The
defect in the warrant is admitted; but that defect is not the
foundation of the claim made here.

The taxes not collected are not claimed, but those which
have been. The defect excuses the collector from collecting,
but does not excuse him from paying over what is paid to
him.

This still remains a duty devolved upon him by virtue of
his office. It was optional for him to proceed in the collec-
tion of taxes, and exhaust what authority was given him for
that purpose, or decline to do so. But electing to proceed,
as he did in this case, he must proceed as collector, and can
do so in no other capacity. Whatever money he receives
upon the taxes, he receives as collector. The condition of
the bond is that " if the principal shall well and faithfully
perform the duties of his said office, then this obligation to
be void, otherwise to remain in full force."

If there has been a failure to pay over the money collected,
there has in that respect been a failure to perform the duties
of his office, and a breach of his bond. If there has been a
breach on his part, the sureties must be equally liable with
the principal. That is the covenant which they made, the

contract to which they became parties. In Boothbay v. Giles, 68 Me. 162, it is said that "a bond conditional for the faithful performance of the duties of collector, will hold him and his sureties to pay over money which he has collected after the delivery of the bond." This principle is fully sustained by the cases cited as well as by later ones. If there is such a failure to pay over as is claimed in this case, and which the evidence tends to show, the action can be maintained against the sureties, as well as against the principal. Brunswick v. Snow et al., 73 Me. 177.

17. "It is quite clear that unless this money can be recovered for the use of the county, it can not be recovered at all. Nor, in our opinion, however improper was this intermixing of funds due different political bodies, has the county thereby lost its right to claim and recover what was in fact assessed for county purposes. The officer was aware that half the county tax had been placed in the wrong column, and the reasons for so doing, and this information, easily arrived at, also by a single calculation enables him to discriminate between the sums due to the State and to his county. This sum actually collected for county purposes and upon a county assessment, must be paid to the county authorities for the use and benefit of the tax-payers and others therein. To deny the relator's right of action, is to affirm the right of the collector after receiving, by virtue of his office, a large sum from the tax-payers, to retain and appropriate half to his own use without accountability to any one; a doctrine alike repugnant, in the words of Shaw, C. J., " to the rules of law and justice." Clifton v. Wynne, 80 North Carolina, 145.

Messrs. Hutchinson & Van Hoorebeke, for defendants in error.

The clerk is a mere ministerial officer, and has no such power. Beckwith v. English, 51 Ill. 148; Ramsey v. Hoeger, 76 Ill. 443; Mix v. The People ex rel., 72 Ill. 241. In the latter case the court say: "The levy of a tax is in its very nature despotic, and is liable, from a variety of causes,

to serious abuse, and hence its exercise is always guarded with care. The power in such officers being delegated by the law, they must be held to exercise it within the limits of the law * * * and all their acts beyond the scope of the power delegated are void," etc. Cooley on Taxations, 2d Ed., p. 423.

In the case of Town of Virden v. Needles, 98 Ill. 370, the court use this significant language: "The money thus in the hands of the respective treasurers is either there by authority of law, or it is there without authority of law. If it is there by authority of law it is revenue for the payment of the bonds and coupons issued, etc. * * * If it is there without authority of law it is not revenue at all, and belongs to the several tax-payers by whom it was paid." In the case of President, etc., v. Senger, 34 Ill. App. 223, the court say: " But where the tax has been collected for some special purpose, and for some reason the purpose has failed, and the money can not be paid out on any other account, then we think the officer becomes the bailee of the party paying the money, and should pay it over to the tax-payer on demand," etc. See also Shoemaker, Auditor, v. Com'rs of Grant County, 36 Ind. 175; this case is full and to the point; Mix v. The People, 72 Ill. 241; Gurnee v. City of Chicago, 40 Ill. 169; The State v. Allen, 43 Ill. 456; we might cite many more cases to the same effect, but we refrain. But we have digressed by our illustration from the real points at issue, and as the French say, " Revenons, a nos moutons."

We should not, however, confound matters and lose sight of the distinction that the sureties are only liable for the acts of their principal done *virtute officii*, and not for acts done *colore officii*. Ripley v. Gelston, 9 Johns. 201; Gerber v. Ackley, 37 Wis. 43; The People v. Schuyler, 4 N. Y. 187; State v. McDonough, 9 Mo. App. 63; Story on Agency, Sec. 309 and 311; The People v. Toomey, 25 Ill. App. 46.

The liability of a surety is limited to the express terms of the contract, the obligation is construed strictly and favorably to him (Ward v. Stahl, 81 N. Y. 406), and in cases

of doubt is resolved in favor of the surety. The liability is not extended by construction or implication. The People v. Toomey, 25 Ill. App. 46; Stull v. Hance, 62 Ill. 52; Phillips v. Singer Mfg. Co., 88 Ill. 305; Dodgson v. Henderson, 113 Ill. 360; Dodge v. The People, 113 Ill. 491; The People v. Toomey, 122 Ill. 315; The People v. Foster, 133 Ill. 496.

The sureties are only liable on the bond for all taxes collected or received by virtue of law (Starr & C. Ill. Stat., Chap. 120, Sec. 258, p. 2113), and these statutory provisions are incorporated and a part of the bond. See also Cooley on Taxation, 2d edition, page 715.

Testing these breaches, the first and second, in the light of the authorities cited, we insist that a levy of taxes, i. e., the rate per cent certified to by the auditor, should have been averred, which, under the law, is the levy for the county clerk to extend, so that the court might see what had been done; for any extension by the clerk beyond the rate certified, i. e., the levy, was illegal and void, to that extent at least. Hubbard v. Brainard, 35 Conn. 563; Cooley on Taxation, 2d Ed., p. 429, 553; The State v. Allen, 48 Ill. 456; Mix v. The People, 72 Ill. 241.

But as to the necessity of averring a levy we are not without authority directly in point. Whitfield v. Woolbridge, 23 Miss. 183; Greenwell v. The Commonwealth, for use, etc., 78 Ky. (1 John Rodman) p. 320; Coons v. The People, 76 Ill. 389. In the latter case the court say: "It is insisted that appellees failed to make a case against appellants; that the order levying the tax should have been read in evidence. The evidence shows there was a bounty tax levied * * * and it does not seem during the whole trial to have been questioned, but to have been conceded * * * and the whole line of defense concedes it. Under these facts we think the court has ample evidence that the tax was levied, and moreover several of the pleas admit the tax was levied."

The conclusion is irresistible that if a demurrer had been filed to the declaration for the want of an averment of a levy the court would have sustained it. If it was necessary to prove it, it was necessary to aver it.

MR. JUSTICE GREEN. This action was brought by plaintiffs in error for the use of Richland County, against Frank P. Gillespie, and the sureties upon his official bond as county collector of said county, to recover for alleged breaches of the condition of said bond. Defendants below interposed a general and special demurrer to plaintiff's declaration, which demurrer the court sustained, and plaintiff elected to abide by the declaration and sued out this writ of error. Defendants in error entered their motion in this court to dismiss the writ and proceedings for want of jurisdiction, and assigned, in support of such motion, two reasons. "First. This is a case relating to the revenue, within the meaning of Sec. 88 of the Practice Act." "Second. The State is interested as a party, or otherwise."

We overrule the motion, and hold that this is not a case relating to the revenue intended by the legislature to be embraced within the scope and meaning of said section, nor is it a case wherein the State is interested as a party, or otherwise, as we understand and construe that section. The State is a nominal party plaintiff, but is not interested in the case as a State. The party interested is Richland County, for its use the suit is brought, and the money sought to be recovered is money that should have been paid over into the county treasury by the collector. Counsel for defendants cite and rely upon certain sections of the Act entitled "Railroad and Improvement Aid Bonds," and the amendments thereto, to sustain the contention that this is a case wherein "the State is interested as a party, or otherwise." The evident purpose of this act is to authorize the issue of new bonds in the place of old ones, given for the indebtedness of counties and other municipalities. To provide for the registration thereof, and for raising, by taxation, sums sufficient to pay annual interest and the principal thereof, which sums are, by the terms of the act, pledged and appropriated to the payment of such annual interest and principal. The State has no interest in said bonds, and incurs no liability by reason of the issuance and registration thereof, but is custodian only of the

The People v. Gillespie.

moneys raised by such taxation when collected and paid over to the proper State officer.' Par. 16, Sec. 5, Chap. 113, Starr & C., Ill. Stats. This tax is in no proper sense a revenue of the State, but when so collected and paid over, it is a fund to be disbursed to the holders of the bonds, and which, by the very terms of the act, could not be paid out for, or appropriated to any State purpose. In this connection we will refer to the question (irrelevant, as we think, to the motion, however,) raised on behalf of defendants, as to the right of the State auditor only, to maintain this suit.

Holding, as we do, that no part of the money sued for is a fund in which the State has an interest, Sec. 259, Chap. 120, entitled "Revenue," cited by counsel for defendants, and conferring power upon and making it the duty of the auditor to sue the collector and sureties upon his bond, etc., and take all such proceedings, etc., as may be necessary to protect the interests of the State, has no application.

Sec. 262, same act, confers power upon cities, towns, villages or corporate authorities to prosecute suit against any collector collecting or receiving funds for their use, by suit upon the bond in the name of the people for their use. The other ground for sustaining the motion is equally untenable. This is not a case "relating to the revenue within the meaning of Sec. 88 of the Practice Act," but the cases embraced within such meaning are those only, in which the question of the legality of an assessment or levy of a tax is directly in issue, or the liability of a person or persons, or of a corporation, to pay a tax levied, is denied, and such liability is the question submitted for adjudication. Of this class of cases are Kilgour v. Drainage Commissioners, 111 Ill. 342; Phoems v. Gleason, 23 Ill. App. 373, and Webster v. People, 98 Ill. 333, cited on behalf of defendants, and our attention has not been called to any case in which suit was brought upon the bond of a collector, sheriff or treasurer (even where the legality of an assessment, levy or tax was collaterally brought in question as a defense) and the juris-

diction of the Appellate Court was denied or challenged. To the contrary, in People v. Hoover, 92 Ill. 575; Lovingston v. Trustees, 99 Ill. 564; People v. Cooper, 10 Ill. App. 384; in each of which cases the suit was brought upon an official bond, and the legality of the tax, or whether the money received was a tax, was brought up collaterally in defense, as in the case at bar; yet the Appellate Court took jurisdiction, and the Supreme Court also took jurisdiction to try the two first named cases on appeal from Appellate Court without questioning the jurisdiction of the latter court. One more query in this connection remains to be answered.

Counsel for defendants in their brief filed with the motion say: " We think this makes it a case relating to the revenue. But if the court should think that the defendant's position is not sound, is this the proper court to decide the question ? "

In reply to this, it seems to us that if it is proper for this court to decide the question in case our decision should be favorable to the defendants, and this seems to be conceded, there can be no impropriety in our deciding the question even if the result should be unfavorable. Inasmuch as the question was submitted unconditionally, and believing it to be our duty to decide it, we have adopted that course and reached the conclusion before stated.

The only other matter to be considered is the action of the trial court in sustaining the demurrer to the declaration. It is in said declaration averred that Gillespie and the other named defendants, on December 31, 1884, executed and acknowledged their writing obligatory in the penal sum of $56,000, which was approved by the chairman of the county board, the county judge, and the county clerk of said county on January 13, 1885, and recorded by the county clerk and the original deposited with the auditor; that the condition of the writing obligatory was and is, that said bounden Gillespie shall perform all the duties required of him and to be performed as collector of taxes for the year 1884 for said county in the time and manner prescribed by law, and when he shall be succeeded in office, shall surrender and deliver up all books, papers and money appertaining to his office as col-

The People v. Gillespie.

lector; that at the date of the execution of the writing obligatory, Gillespie took the oath of office required by law, and entered upon his duties as collector of taxes as aforesaid, he then being the treasurer of said county, duly elected and qualified, and then and there *ex officio* collector of taxes for 1884, within and for said county; that said Gillespie did not faithfully discharge and perform all the duties required of him as such collector for 1884, in the time and manner prescribed by law, nor deliver up all books, moneys and papers pertaining to his office, as collector, to his successor, nor to the person or persons authorized to receive the same. Three breaches are assigned, as follows: And for assignment of a breach of the conditions of said writing obligatory, the plaintiff says that said Frank P. Gillespie failed, neglected and refused on or before the 10th day of April, 1885, to make a sworn statement of the total amount and kind of taxes received by him as such collector of taxes for said county, for the use and benefit of said county, either by himself or from the town and district collectors of said county; omitted and neglected to so report, and make a sworn statement of a large amount of money collected by him, to wit, the sum of $20,762.42, of taxes collected by him for the year 1884, which had therefore been extended on the tax books for said year by the county clerk of said county for collection; and said Frank P. Gillespie, as collector, in his final settlement with the county board and county clerk of said county, failed, neglected, and refused to report and account for a large sum of money, to wit, $20,762.42, which he had collected, as such collector, for the use of said county, for the purpose of making payment of interest on certain bonds of the county of Richland, which tax had been extended on the collector's books by the county clerk; and said Frank P. Gillespie, as collector, only accounted for and paid over for the purpose aforesaid the sum of $20,162.16, and retained the balance to his own use.

And for further assignment of a breach of the writing obligatory, the plaintiff says that the county of Richland owed certain registered bonds, and pursuant to law the

auditor of the State of Illinois certified to the county clerk of Richland County the amount to be raised by taxation for that year to meet said outstanding obligations, and that the county clerk extended on the tax books of Richland County for said purpose the sum of $20,762.42; that the same was collected by said Frank P. Gillespie, as collector aforesaid; that upon settlement with the auditor and treasurer of the State of Illinois as required by law, said Frank P. Gillespie paid to the treasurer of the State of Illinois for the purpose aforesaid, the sum of $20,158.16; that there still remains in the possession of Frank P. Gillespie, as collector, the sum of $604.26, collected over and above the amount demanded for the purpose of paying interest on said bonds, and said Frank P. Gillespie failed, neglected and refused to account for and pay over to himself, as treasurer of Richland County, said sum of $604.26, but converted the same to his own use. And for further assignment of the breach of the condition of said writing obligatory, said plaintiff says that in settlement with the board of supervisors of said county, as collector of taxes for the year 1884, he, the said Frank P. Gillespie, as such collector, charged and received credit in his settlement with the board of supervisors the following sums of money to which he was not entitled, to wit:

| | |
|---|---:|
| Errors and abatements, R. R. B. tax | $ 13.92 |
| Insolvencies, R. R. B. tax | 45.59 |
| Errors and abatements, county tax | 15.38 |
| Insolvencies, county taxes | 39.18 |
| Over credit April vouchers | 10.00 |
| Over salary | 261.95 |
| Making total credits | $386.02 |

erroneously allowed in his settlement with said board of supervisors, which said sums belonged to the county of Richland.

The declaration concludes with proper averments.

To this declaration the defendants interposed the following demurrer: "Now come the defendants, by T. W. Hutchinson, attorney, and demur to the declaration filed in said cause and to each of the so-called breaches of the conditions

of said bonds, and say that the same are, and each of said breaches is, insufficient in law.

They also assign the following special causes of demurrer, to wit:

First. The first breach does not state the amount of tax that was levied for county purposes in the year 1884.

Second. It does not show that the so-called tax was extended by virtue of any levy for county purposes.

Third. The statement that the moneys named were for the use of Richland County, is only the legal opinion of the pleader. The fact that a levy of taxes for county purposes was made, and the amount of it, or the rate and equalized valuation of the property in the county, ought to be set forth so that the court can see whether the same is county funds, for which this suit will lie.

Fourth. The second alleged breach is defective, in not stating what amount or rate was levied for county purposes for that year.

Fifth. In stating only the pleader's conclusion of the ownership of the fund sued for, not stating the amount of levy, nor indeed that there was any levy, the levy, the rate or amount thereof, the equalized valuation of property in said county, should be shown, and all other facts (not conclusions), so that the court can see and determine the proprietorship of all funds.

Sixth. The statement that the auditor certified to the county clerk the amount required to pay interest on registered bonds, pursuant to law, is bad on its face. The law requires the auditor to certify the number of cents on each $100 to be extended by the county clerk. The plaintiff ought to be required to state the facts and not to be allowed to avoid them by a general statement, as was done here.

Seventh. The third breach contains items not chargeable to the defendants in any case. Some of them are proper charges (if true) in an account with a treasurer, but not proper charges against a collector.

Eighth. The item of over salary is not a matter of suit on a collector's bond and ought to be stricken out.

Ninth. The several breaches assigned fail to state the valuation of property as equalized in Richland County. This is necessary, because fraud is relied upon by the plaintiff, and without a knowledge of this, as well as the amount of levy, the pleading does not put the court in possession of the necessary facts.

Tenth. In the third assignment of breach the charge of $261.95 for over salary, and the charge of $10 of over credit on April vouchers, are both matters not chargeable in an action on a collector's bond.

The other four items charged in said breach are chargeable in this suit, being matters arising upon a tax levied to pay interest on registered bonds, and the levy is a State matter and settled with the auditor of the State instead of the county board, wherefore defendants pray judgment, etc.

T. W. HUTCHINSON,
WITCHER & VAN HOOREBEKE."

Counsel for defendants devote much space of their printed argument upon this branch of the case, to a discussion of the same matters already disposed of by us in deciding the motion to dismiss this appeal. They contend again that by the provisions of Chap. 113, "Railroad and Improvement Aid Bonds," and Chap. 120, "Revenue Act," the sum claimed in the first and second breaches assigned was part of the State fund and should have been paid to the State treasurer, and on failure to make such payment the State auditor must bring this suit as provided in Secs. 259 and 260 of the Revenue Act. We hold adversely to this contention and have given our reasons therefor, hence it is unnecessary to go over the same ground again.

In the first breach assigned it is averred that Gillespie failed, neglected and refused, on or before the 10th day of April, 1885, to make a sworn statement of the total amount of taxes received by him as such collector of taxes for said county, for the use and benefit of said county: omitted and neglected to so report and make a sworn statement of $20,762.42 of taxes collected by him for 1884, which had theretofore been extended on the tax books for said year by

the county clerk for collection, and as collector in his final settlement with the county board and county clerk, failed, neglected and refused to report and account for $20,762.42, which he had collected as such collector for the use of said county, to pay interest on certain bonds of Richland County, which tax had been extended on the collector's books by the county clerk, and Gillespie as collector, only accounted for and paid over for the purpose aforesaid, $20,158.16, and retained the balance to his own use.

The special grounds for demurrer set up to this breach are: "That it does not state the amount of tax that was levied for county purposes in the year 1884." "It does not show that the so-called tax was extended by virtue of any levy for county purposes." "The statement that the moneys named were for the use of Richland County, is only the legal conclusion of the pleader. The fact that a levy for county purposes was made, and the amount of it, or the rate and equalized valuation of the property in the county, ought to be set forth so that the court can see whether same is county funds, for which this suit will lie."

The first breach is not obnoxious to the special demurrer upon the grounds set forth and relied on. It was unnecessary to aver said tax was extended by virtue of any levy. The averment that Gillespie had collected the money named as such collector, for the use of the county, was not a conclusion of law, but an averment of fact admitted by the demurrer to be true, and it was not necessary to set out that a levy for county purposes was made, and the amount of it, or the rate and equalized value of the property in the county. Without such averments, a good cause of action is set up in this breach. By sufficient averments it appears that Gillespie had failed, neglected and refused to perform duties as collector, required of him by the statute, and violative of the condition of the bond sued on; that as such officer he had failed, neglected and refused to report and account for a balance of $604.26 remaining in his hands as collector, of taxes collected by him as such collector, for 1884, for the use of the county, and retained that sum to his own use.

He and his sureties can not be heard to say the levy was not properly made, or the tax collected without proper authority. He collected and received it by virtue of his office, and it was his duty to report and account for the same and charge it to himself as treasurer. In People v. Hoover, 92 Ill. 575, it was held when a treasurer in counties under township organization receives taxes belonging to the county, he will be considered as holding the same as collector until he reports them to the county clerk, as required by Sec. 120 of the Revenue Act, and his sureties are liable. The bond of collector secures the performance of duties not covered by his bond as treasurer.

In Lovingston v. Trustees, 99 Ill. 564, it was insisted the law misappropriated the fund collected by defendant, Lovingston, as township treasurer, and the board had no constitutional rights to the fund, hence could not recover even if Lovingston was not entitled to it. *Held*, that even if trustees were not entitled to it, he received it for them as their officer, and if the corporation was not entitled to it, still the corporation would be liable to refund it and should have the money to meet the liability, and the treasurer had no right to hold the money.

In People v. Cooper, 10 Ill. App. 384, one of the defenses relied on was that part of the sum Cooper collected, as collector, was levied without authority of law, and the city could not recover. *Held*, that if there was irregularity in the levy of the tax, the collector could not raise the question when he was called upon to pay over what he had collected. He had received the money for the use of the city and he should account for it. That it was not material that those from whom he had collected it might have resisted payment. Citing Cooley on Taxation, 498–9, and cases there cited; Burroughs on Taxation, 264; Coons v. People, 76 Ill. 390; Lovingston v. Trustees, *supra*. In the opinion it is also said: "Were this a proceeding between the tax-payer on the one side and the collector and city on the other, to prevent the payment of the tax, or the application of it after its collection, then the question would

properly arise whether it was levied and collected according to law," and Virden v. Needles, 98 Ill. 370, would be in point. But such is not the case under consideration. This is only a case where the city is calling upon the collector to pay over money which he has collected for its use, and in such a proceeding he can not object that the tax was collected without proper authority. The distinction is thus clearly drawn between cases of this character and cases cited by defendants wherein a taxpayer is resisting the collection of an illegal tax, and greater particularity is required in averments of the declaration.

It also suggested that said breach is double and repugnant. "Double, because the failure to report should be averred in a separate breach; so the failure to account. Repugnant, because it avers his failure to report and account for $20,762.42 for the use, etc., and in the next clause it avers that he did account for $20,158.16 of that sum, and retained the balance." The special demurrer does not include these objections and they can only be raised by special demurrer.

It is further urged that there is no averment in either of the three breaches of a demand upon Gillespie, as required by Sec. 245 of the Revenue Act. That section provides that suit may be brought upon collector's bond if he fails to make the reports and payment required, by preceding sections, *within five days* after the time specified, or after demand made. If demand was necessary, which we do not concede, it could only be required in case it was desired to bring suit before the expiration of the five days; after that period, the collector, failing to make reports and payments as required, would be in default without demand made.

But we understand when an officer has received money, which, by the terms of the law prescribing the duties, he is required to dispose of in a specified mode by a particular time, and fails to do so, then to avoid liability he must account for its proper and legal disposition. Coons v. People, 76 Ill. 383. The special causes of demurrer to the second breach assigned are substantially like those in the special

demurrer to the first breach, and for the reasons already given, we think the general and special demurrer was improperly sustained to said second breach. The demurrer to the third breach assigned was properly sustained. Some of the items therein averred were proper charges against defendant in his account as county treasurer, but for which the sureties upon his collector's bond are not liable. We do not wish to be understood, however, as deciding that the item " over salary " is included among the items for which defendants are not liable.

The judgment is reversed for the error in sustaining the general and special demurrer to the first and second breaches assigned, and cause remanded.

*Reversed and remanded*